Our next case for argument this morning is Warciak v. Subway Restaurants. Mr. Tepsky. Thank you, Your Honor. May it please the Court. The two main issues in this case are, at bottom, they're pleading issues. The first question is whether Rule 8 requires a plaintiff to plead a legal theory of vicarious liability in order to get passed a motion to dismiss. The answer to that, consistent with this Court's longstanding precedent, is no. The second question is whether the allegations in Mr. Warciak's complaint establish defendants' affirmative defense that the text message that he received falls under this narrow... Counsel, obviously complaints don't need to plead law, nor need they plead facts, but they have to make a plausible claim. That's the Supreme Court's view of pleading. You have filed this lawsuit not against T-Mobile, but against Subway, and your claim is that T-Mobile was Subway's agent. What did Subway do, according to the complaint, to make you believe that T-Mobile was Subway's agent? The text message that my client received specifically calls out Subway by name and trademark. No. You need to listen carefully to my question. What did Subway do to make your client believe that T-Mobile was Subway's agent? Our understanding, based on the text message, is that it was... No, you can't rely on the text message from T-Mobile. It's a fundamental rule of agency law that agency is determined by the principle, by what the principle says or does, that the supposed agent cannot of itself create either actual or apparent agency. The message from T-Mobile, if it were from Subway, might suffice. But I'm asking quite precisely what Subway did, not what T-Mobile did. So I guess I'd like to be clear. Our allegation is that the text message is from Subway, that it is a part of a Subway marketing campaign, and that our belief is that Subway... I thought it was agreed that the message was from T-Mobile. No, I don't believe that it is. No, in fact, our allegation is that the message is... There are two separate questions here. One question is, who pressed the button to cause the technical message to be sent? The broader question is, who is the message from when a judge asks his clerk to send an email? The message, the email, is still from the judge, even if the clerk pressed the send button. So are you still pursuing a theory of direct liability against Subway? My understanding from the briefing was that you were only pursuing vicarious liability. We think direct liability is still a possibility. Whatever happened between Subway and T-Mobile, we know there is some kind of agreement. We know there must be a contract, but we don't have it. We don't know what happened between those. So it may be that Subway is so involved in the sending of the text message that they are liable. There are SEC guidance that suggests that that's possible. We think that the more likely scenario is a vicarious liability scenario. But as to the question of exactly what Subway did, we don't know, and I don't think we really have the ability to know. It may well be that Subway has direct control over all of this. That would be in an agreement between Subway and T-Mobile that's not public and that we're not privy to. All we have is a text message that we received, that the client received, that says, you know, this text message claims to be from T-Mobile, but then it uses Subway's trademark, it uses Subway's name. And so I don't think it's unreasonable to look at that and say, well, it seems like Subway is involved in this. And that, I think, is enough to make it to certainly put Subway on notice that we're seeking to hold it vicariously liable. The question is specifically how, and it may well be a matter of control. I think we would even have a good faith basis to allege that control, but I don't think, you know, it would be effectively a yes. But what have you alleged that would make it plausible that Subway could be vicariously liable here? It is, it seems very unlikely to us that a text message could come that offers a free sandwich in a Subway restaurant. And that, you know, I think a reasonable inference from our complaint is that no one has contested that Subway did, in fact, honor this promotion. If that had been done without Subway's knowledge or approval or involvement in any way, you can't just walk into a Subway and show your phone and say, please give me a free sandwich. There has to be some kind of involvement. I don't know whether you're just getting the need to show that the kind of involvement is agency, rather than Subway agreeing with T-Mobile to sell it as many sandwiches as T-Mobile wants to buy. That's not an agency relation. It is possible that there is not an agency relation. That is certain. We can lose this case. We can lose it at summary judgment. But as a matter of pleading, you know, there isn't a way for us to know what that specific, you know, what happened in the – When CBS runs an advertisement for T-Mobile, CBS is not T-Mobile's agent. There's a standard commercial relationship between them. The question I'm asking, and I think Judge St. Eve is also asking, what makes you think this relation is one of agency rather than of buyer and seller? Sure. So I guess that gets into the more specific apparent authority theory, which – No, you're – unless Subway did something clothing T-Mobile with apparent authority. That's part of the problem. All you're alleging is what T-Mobile did and not what Subway did. My second question is what reason have you to believe that this is anything other than a buyer-seller relation, that is, that it's an agency relation rather than a standard commercial sale? So one of the ways that agency can be created is that if a principal makes a communication, even through an agent, that is, that it intends people to rely upon, right? Subway can intend to direct out to people, I am, you know, I am cloaking someone with authority, and it can do that by directing an agent to make a statement or allowing an agent to make a statement. And so here, one plausible thing that could have happened, that we think likely did happen, is that Subway authorized T-Mobile to send out this text message using its trademark offering this sandwich and that it wanted the people who received the text message to understand that the text message was authorized by Subway. That is, that whoever was sending the text message to T-Mobile was authorized by Subway to make that statement, was authorized by Subway to use the trademark to offer a free sandwich to make, you know, an actual offer of product on behalf of Subway. That is an agency relationship. That's Subway saying, you know, yes, all who received this text message, the person who sent this is allowed to tell you, on my behalf, the information in here and to make this offer to you. And I think that that does create an agency relationship. You know, again, do we know for certain that this exactly? So do you think that when CBS runs a Subway ad, CBS is Subway's agent? No, I don't think that's the case. I think that is a very different scenario. That is not a direct. And I don't understand why this is any different. The Subway ad on CBS is just full of Subway's trademarks. But it's a standard buyer-seller relation. CBS is selling time, Subway has bought some. It's the same when Subway buys a page in a magazine. You can't sue the magazine claiming that it's Subway's agent. In those cases, I think it is well understood that the communication is not one from the magazine. It's a paid advertising. The communication is from the magazine, but not as Subway's agent. I think that folks reading, under that circumstance, it would be reasonable to sue if there were some sort of communication there. It would be reasonable to sue Subway. It would be reasonable to sue the person who's actually making the communication. One wouldn't sue CBS for something said in that advertisement. That wouldn't make any sense. Well, you might. The most famous First Amendment case in American history, somebody placed an ad, and somebody who didn't like it sued the New York Times. I understand that. I think in terms of a violation, for example, if there was some sort of contract claim or some other sort of violation, the natural defendant in that case would in fact be Subway, would be the company that took out the ad. No, the speaker. The natural defendant would be the speaker. And in that case, I think that would be— But here, you haven't sued the speaker. That's the odd thing about this case. I think, Your Honor, in your hypothetical, T-Mobile is analogous to CBS, to the magazine, and Subway is analogous to the person who's purchasing the advertisement. And I don't think it's unreasonable— If Subway bought the advertisement rather than T-Mobile buying sandwiches. And our— That's why I'm asking whether you have any plausible argument that this is other than T-Mobile buying sandwiches. Our allegation is in fact that this was a marketing campaign by Subway. I know it's your allegation. The question is whether it is a plausible allegation. I think it is. So I don't think it's strange to think that a company might want to drive traffic to its stores by sending out a marketing campaign for a very— by the way, not just any sandwich, but a specific trademarked sandwich name that Subway advertises regularly. The idea—it doesn't—I guess it does not seem implausible to me that Subway would want that from T-Mobile, would want to engage in that marketing campaign. Certainly, I think that's the type of allegation that can be credited as a motion to dismiss it. If you're pursuing an agency theory, do you agree that if T-Mobile cannot be held liable, that Subway cannot be held liable? No, I don't agree with that. I think there are plenty of cases where an agent might not be liable, where a principal still could be. But doesn't a principal's vicarious liability turn on whether or not the agent is liable? No. For example, if the agent is incapable of being held liable for reasons—for example, if that person is a child. If the agent is a child, right, if you direct a child to do something— There are two sophisticated businesses here, T-Mobile and Subway. How could it be that the principal could be liable if the agent isn't, under a vicarious liability theory? So I guess, first of all, it's not clear that T-Mobile wouldn't be liable here. But either way, I think the way that the liability— If the wireless carrier exception applies, T-Mobile could not be liable here. I'm just assuming that it does apply. Although, again, there's, I think, a serious question as to whether that wireless carrier exemption would extend to anybody who happens to work with a wireless carrier. I don't think there's any indication that the FCC wanted to immunize not only this narrow class of service-related messages from wireless carriers, but anybody a wireless carrier happens to work with. But it wouldn't be extending it, would it? It would be saying, if the wireless carrier exception applies to T-Mobile itself, and T-Mobile is not liable given that, how could the principal be liable? And I think the answer is that the exemption here is intended to be narrowly directed at a specific set of service-related messages from wireless carriers and is not intended to be looked at any broader than that. And that includes when a third party hires a wireless carrier to do something it wouldn't otherwise be allowed to do. I don't think there's any indication that the FCC intended to allow folks to do that. Did your client sign an agreement with T-Mobile that authorized T-Mobile to send these texts? My client didn't sign any agreement with T-Mobile. Or was it part of the carrier agreement that T-Mobile could send these texts? I do not. There's nothing in the record to that effect. I do not. I don't know. You're the one pleading, though. And if you know that your client couldn't sue T-Mobile because your client's agreed that T-Mobile could send these texts, it seems like that would be relevant, especially under an agency theory. The reason my client didn't sue T-Mobile is that there's an arbitration agreement that arguably applies to T-Mobile, although, as this court held, does not apply to Subway. And so it really doesn't have much to do with the wireless carrier exemption. It has much more to do with the forum. Separate and apart from the wireless carrier exemption, is there anything in that agreement where your client agreed T-Mobile could send these texts or your client agreed to participate in this T-Mobile program? My client didn't sign that agreement. His mother did. So our position is that our client has not agreed to anything with T-Mobile. There may be estoppel arguments that they can make, but for the moment, no. Is there anything in that agreement where there was an agreement to participate in this T-Mobile weekly program? I don't believe there was any type of consent, although, again, I don't know for certain. And I see my time has almost expired. Thank you. Certainly, counsel. Ms. Brown. Good morning, Your Honors, and may it please the court. My name is Christy Brown. I represent the Applebee's Subway Restaurants, Inc. As the court has noted, the plaintiff has asserted a TCPA claim against Subway here based on a text message that Subway did not send. That text message was sent by the wireless carrier for the plaintiff, T-Mobile. Now, you have heard the appellant suggest that he has alleged that, in fact, Subway may have sent that text. But that is not correct under paragraph 14 of the complaint, which alleges that Subway engaged T-Mobile to send the text. So we're not talking about a case of direct liability here. The allegations in the complaint have to be viewed through the lens of vicarious liability. The district court correctly dismissed the claims against T-Mobile, I'm sorry, against Subway because the plaintiff has stretched too far. And you heard me get confused about who the claims were asserted about. That is because the very essence of this case is about a T-Mobile text message. But the plaintiff has a burden here. It's not just a burden to give Subway notice that it's seeking to hold Subway liable for the T-Mobile text. The plaintiff has to allege a plausible claim for relief. And when Subway did not send this text message, that means a plausible basis for holding Subway vicariously liable for the text. Should the court have given the plaintiff the opportunity to amend his complaint here? No, Your Honor. I think the court was well within its discretion for three reasons. The first reason is that in the presentment hearing on the motion to dismiss, the court essentially engaged in a futility dialogue. The court asked the plaintiff what else they have and what else they could allege, and the plaintiff said, we have nothing. This is it. And you heard that repeated today. When the panel asked for basis of a plausible claim, what you heard was speculation. There must be an agreement. There must be something. But the plaintiffs have admitted they don't have any other facts to allege, and the facts they have alleged are insufficient. So that's the first reason that there was no reason for the court to allow an amendment. The second is that on the allegations that are included in the complaint, the content and the content of this text message render implausible any argument that this text was being directed and sent and controlled by Subway. This is a text about a T-Mobile service for its T-Mobile customers, the T-Mobile Tuesdays offering, and included a link to a T-Mobile website. And when the plaintiff clicked on that link, if he had, he would go to a T-Mobile website that told him how to get a T-Mobile app and that told him about the package of benefits that were available to T-Mobile customers just for being with T-Mobile. It wasn't just Subway. If you look at that landing page, which was appropriately before the court on the motion to dismiss, in which the plaintiffs didn't challenge, it also refers to Wendy's. Wendy's is a competitor of Subway's. In addition, it informs the plaintiff how he and other T-Mobile subscribers can obtain free T-Mobile stock. That's not a Subway-directed advertising complaint. It's not plausible for the plaintiffs to contend that it is. And third and finally, there was no error in the failure to allow leave to amend because the wireless carrier exemption applies here and it bars the plaintiff's claims. So to jump back to agency for just a moment, there are no allegations in the complaint that would create a reasonable inference of agency. And there are kind of two flavors of common law agency that are relevant. One is traditional common law agency, which requires control. As the district court properly found, there are no allegations at all in the complaint that Subway controlled anything with respect to this text message. All we have is the allegation that they engaged T-Mobile. But as Judge Easterbrook alluded to in some of his questioning, a mere vendor relationship, a mere advertising arrangement, a buyer-seller connection, that does not necessarily create agency. You need more. You need control. There are no allegations of control. And that's why the plaintiffs have focused on apparent authority. But that argument, too, is fundamentally flawed here. A critical element of apparent authority is what we call a manifestation of the principle. Words or conduct by the principle, here Subway, creates a reasonable belief in the plaintiff that they were holding T-Mobile out as their agent. There is nothing alleged in the complaint that was said by Subway to the plaintiff directly or indirectly. There is no conduct that is alleged by Subway. And you cannot point to the text message itself. Those are the words of T-Mobile. T-Mobile is sending the text. And the case law is crystal clear under the Wheaton decision, under the Smith v. State Clear decision, under the comments to the restatement of torts, that you cannot point to the content of the agent to hold a principle libel. So there is no plausible claim for a violation of the TCPA. And the court correctly dismissed the plaintiff's claim. That brings us to the wireless carrier exemption. And the wireless carrier exemption is another reason that the district court correctly dismissed the claim. And let's start with a question, Judge St. Eve, that you ask about the relationship between these two arguments, because it probably makes sense to cover that before moving from one to the other. But even if the court were to find that there was a plausible allegation of agency, and there is not here, but if the court were to find that there is one, there still could be no vicarious liability. Because principles of vicarious liability rely on imputing the wrongdoing or the liability of the agent to the principle. That's a fundamental concept under agency law. Vicarious liability only attaches when the agent is first found to be liable. We know that from the Suarez case, which is cited in our brief. It's also in the comments to the restatement at Section 7.03. That's a hornbook principle of the law. So if T-Mobile is not liable for sending this text under the wireless carrier exemption, then there can be no vicarious liability. How do you respond to plaintiff's argument that that exemption only covers service-related messages? That is an argument that does not find support in the text of the exemption as created by the FCC. So the exemption was first created by the FCC in 1992 order that is referred to in the pleadings, and it was pursuant to a congressional delegation of authority that gave the FCC the ability to create the exemption. The FCC created an exemption for, at that time, calls, later extended to text messages, placed from a wireless carrier to its subscribers for which the subscribers were not charged. Period. The end. That was the exemption. This text falls within the scope of that exemption. It's indisputably a communication between T-Mobile and its subscriber, and there has never been any claim that the plaintiff was charged for that communication. In 2012, the FCC had the opportunity to revisit the wireless carrier exemption, and it considered a request for clarification from who? T-Mobile. And the question that T-Mobile asked was, could you clarify whether this exemption also applies to communications about new products? Not services, new products. And the FCC said, we point you back to the 1992 order where we have spoken. There's an exemption that protects communications between a carrier and its subscribers for which the subscriber is not charged. The FCC did not draw a line that took marketing communications outside the scope of the exemption, and the entirety of that 2012 proceeding where the FCC reiterated the exemption was about marketing. It was about the heightened consent requirements that may apply to marketing communications. There's very little case law on this exemption. Do you have any explanation for why that is? Your Honor, I don't have an explanation as to why that is. But you're right, it is an issue that has not been much litigated. I know that Your Honor had an experience with it in the Lozano case, and there an entity that was not a wireless carrier was trying to sweep it in. But the scope of the exemption is broad on its face, and there is no basis for restricting it to marketing communications. The plaintiff argues it's limited to services. That's not correct under the order, but even if you were to consider some sort of a limitation, the language in the FCC order that refers to services is not wireless service. It says customer services, and this text is clearly about a T-Mobile customer service. The only way that you get access to this T-Mobile Tuesdays program is by being a T-Mobile customer. We know that from the complaint. It says just for being with T-Mobile. So the wireless carrier exemption applies here. You have seen some references perhaps in the plaintiff's briefing to an altogether different order of the FCC. That's an order back in 2003 that they claim put some limits on the wireless carrier exemption. Just want to point out that entire proceeding had nothing to do with wireless carriers or the wireless carrier exemption. It was addressing an exemption that applies to calls to residential phone by landline carriers, and so that is simply inapplicable. Your Honor, the plaintiffs have stretched too far here. They have, for reasons that have now been set in court to avoid an arbitration clause, sued a party that did not send the text message. And Judge St. Eve, just to follow up on a question that you had asked, the relevant contract is in the record because we have been up to the Seventh Circuit before, and in that proceeding it was on a motion to compel arbitration under a third-party or equitable estoppel theory of enforcement. And at that time, that contract was in the record, and it does allow for communications to customers. It has an arbitration agreement. It has a class-action waiver clause. That's why we're here today. But the plaintiff has not asserted a plausible claim for relief, and the district court's order should be affirmed. If there are no other questions, I'll cede the remainder of my time. Thank you, Your Honor. Thank you. Counsel, you have 15 seconds left. Anything further? Very briefly, as far as what is in the record, the record on arbitration should be considered a motion to dismiss. As far as the wireless carrier exemption goes, it is not period, end of story, once one reads a single sentence of the FCC's order. Thank you, Counsel. The case is taken under advisement.